UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**MSC MEDITERRANEAN SHIPPING CO.
S.A.,**

Plaintiff,

v.                                                        **No. 4:24-cv-01129-P**

**BNSF RAILWAY CO.,**

Defendant.

## OPINION & ORDER

Before the Court is Defendant BNSF Railway Company's ("BNSF") Motion to Transfer Case out of District/Division to the United States District Court for the Northern District of Illinois.[1] ECF No. 12. Having reviewed the Motion, relevant docket filings, and applicable law, the Court finds that the Motion should be granted.

## BACKGROUND

This case arises out of two separate agreements to provide rail transportation services carrying cargo from California to Illinois. For the first agreement, on December 21, 2020, Plaintiff MSC Mediterranean Shipping Company, S.A. ("MSC") delivered a shipment of vacuum cleaners from Malaysia to BNSF in Long Beach, California ("First Cargo"). BNSF was then responsible for transporting the First Cargo to Chicago, Illinois. For the second agreement, on August 11, 2022, MSC delivered a shipment of vacuum cleaners from Malaysia to BNSF in Oakland, California ("Second Cargo", or collectively, "Cargo").

---

[1] Prior to the consolidation of 4:24-cv-899 with this case, BNSF filed virtually identical motions to transfer in both cases. While this Order refers exclusively to the Motion filed in 4:24-cv-1129, the reasoning is applicable and sufficient to resolve both motions.

As with the First Cargo, BNSF was then responsible for delivering the Second Cargo to Chicago, Illinois.

In both instances, MSC alleges that the Cargo was pilfered while in BNSF's custody and possession. And due to BNSF's failure to deliver the Cargo, MSC resolved its liability with the Cargo owner and the common carrier for $200,000 on the First Cargo and $150,000 on the Second Cargo. MSC now seeks indemnification and contribution from BNSF on these payments.

BNSF publishes its Intermodal Rules and Policies Guide ("Intermodal Rules"), which contain terms for BNSF's performance of its rail transportation services. Shippers, such as MSC, must agree to the Intermodal Rules for BNSF to provide its services. Included in the Intermodal Rules is the following forum-selection clause (hereinafter "FSC"):

> All loss or damage suits filed against BNSF shall be filed in a United States Federal District Court in the location of the shipment's origination or termination on BNSF. If the United States Federal District court does not have jurisdiction, the suit shall be filed in the appropriate U.S. State Court where the shipment originated or terminated on BNSF.

Based on this clause, BNSF filed this Motion to Transfer the case to the Northern District of Illinois—the location where the Cargo was to be terminated. The Court now addresses the Motion.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. §1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). When considering a motion to transfer venue, a district court must consider several private and public interest factors "none [of which] can be said to be of dispositive weight." *Id.* at 315. The private factors include: (1) the relative ease of access to sources

2

of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *Id.* The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.*

However, the Supreme Court in *Atlantic Marine* explained that the existence of a forum selection clause alters this analysis in two ways. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013). "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 63. Second, the "district court may consider arguments about public-interest factors only," because the private-interest factors "weigh entirely in favor of the preselected forum." *Id.* at 64. A valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 59–60.

## ANALYSIS

Given BNSF's argument that the FSC warrants transfer of this case, the Court must consider: (1) whether the FSC is valid and enforceable; (2) whether the FSC applies to the claims brought by MSC; and, (3) if the FSC is both enforceable and applicable to MSC's claims, whether the public interest factors favor transfer of the case. The Court will address each in turn.

### A. Enforceability of Forum Selection Clause

BNSF argues that the FSC is both valid and enforceable. MSC's sole contention regarding enforceability is that the FSC is permissive as opposed to mandatory. "Only mandatory clauses justify transfer or dismissal." *Weber v. Pact XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). In determining whether a forum selection clause is mandatory, courts evaluate "if [the clause] contains clear language specifying that litigation *must* occur in the specified forum." *Id.* at 769.

The inclusion of the word "shall" in a forum selection clause often makes the clause mandatory rather than permissive. *See, e.g., Fleetwood*

3

*Services, LLC v. Complete Bus. Sols. Group, Inc.*, No. 3:17-CV-2272-G, 2018 WL 501184 (N.D. Tex. Jan. 22, 2018). Here, the FSC states that suits against BNSF "*shall* be filed in a United States Federal District Court in the location of the shipment's origination or termination on BNSF."[2] MSC contends that the word "shall" does not necessarily indicate a clause is mandatory and cites to *Keaty v. Freeport Indonesia, Inc.*, for support. 503 F.2d 955 (5th Cir. 1974). But *Keaty* illustrates why the FSC in this case *is* mandatory. In *Keaty*, the Fifth Circuit evaluated a forum selection clause that read: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." *Id.* Based on a plain reading, the *Keaty* clause's use of "shall" is referencing a choice of law. The forum selection clause, however, merely states that the parties "submit" to New York as *one* appropriate venue. On the other hand, the FSC in this case states that all cases "shall be filed" in one of two locations: the location of the shipment's origination or the location of the shipment's termination.

MSC's next argument that the FSC is ambiguous is equally unpersuasive. MSC asserts that the FSC is ambiguous because it does not "precisely specify the chosen forum."[3] Returning to the FSC, it states that suits against BNSF "shall be filed in a United States Federal District Court in the location of the shipment's origination or termination on BNSF." MSC is correct that the clause does not specify a single location—it specifies two potential locations. But multiple fora may be identified in a mandatory forum selection clause. *See Polaris Eng'g, Inc. v. Texas Int'l Terminals, Ltd.*, No. CV H-20-3389, 2021 WL 5155691, at *5 (S.D. Tex. Apr. 16, 2021) (collecting cases that found a clause designating several fora as mandatory). For international transport contracts, such a clause with multiple fora is often necessary because "there is much uncertainty regarding the resolution of disputes" in international matters. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998). The Court declines to invalidate a clause solely on the basis that it specifies two locations.

---

[2] ECF No. 14, A-50 (Item 28, ¶6) (emphasis added).
[3] ECF No. 21, at 12.

Given the plain language interpretation of the FSC, the Court finds that the FSC is mandatory and enforceable in all other respects.

## B. Application of Forum Selection Clause to MSC's Claims

The Court now turns to the question of whether the FSC applies to the claims brought by MSC. BNSF argues that the FSC is applicable to MSC's claims in this case. MSC responds that its indemnity and contribution claims are not subject to the FSC. To determine whether a forum selection clause governs a claim, courts "must look to the language of the parties' contract." *Sebastian*, 143 F.3d at 222.

The FSC uses broad language to encompass many claims. Again, the language in the FSC states: "[a]ll loss or damage suits filed against BNSF" are subject to the FSC.[4] This language does not delineate between types of claims—contract or otherwise.

MSC's attempts to narrow the FSC are futile. MSC first makes the distinction that the FSC does not apply to its claims because *MSC* suffered no loss—rather, the owner of the Cargo suffered a loss, and MSC seeks an equitable indemnity claim as a result of the Cargo owner's loss.[5] But MSC cannot avoid the FSC solely because it brought a suit for indemnification after settling with the Cargo owner rather than simply bringing a breach of contract suit against BNSF. And while the Court does not presume that MSC deliberately waited to file an indemnification claim to dodge the FSC, it must nonetheless be wary of defeating the FSC on a technical distinction.

Second, MSC argues that the "Intermodal Rules are undeniably silent on indemnification claims," and, as a result, the FSC does not apply here. Courts have rejected attempts by parties distinguishing tort claims as independent from a contract claim subject to an FSC. *See, e.g.*,

---

[4]In its response, MSC misstates the FSC as saying, "liability for cargo loss and damage" instead of "all loss and damage." ECF No. 21, at 6. Based on the Intermodal Rules attached by BNSF, this is incorrect. *See* ECF No. 14, A-50 (Item 28, ¶ 6). In any event, this distinction is not necessary for the Court's conclusion that the FSC applies to MSC's claims.

[5]*See* ECF No. 21, at 6 ("As BNSF knows, MSC suffered no cargo loss or damage.").

*Sebastian*, 143 F.3d at 222 n.27. The unavoidable fact is that MSC's claims *arise out of* the loss or damage to the Cargo.

Thus, the plain reading of the FSC trumps all arguments made by MSC. The FSC does not say "all loss or damage suits brought by the owner of the Cargo"; it says, "all loss or damage suits," suggesting that any lawsuit *relating* to the loss or damage of the Cargo is subject to the FSC. BNSF is not required to list the specific types of claims that may relate to the loss or damage of cargo, is it sufficient that the indemnification claim relates to the loss or damage of the Cargo in this case.

## C. Factors for Transfer

Given the Court's decision regarding the enforceability and application of the FSC, it now turns to the procedural tools for enforcement of the FSC. BNSF asks the Court to transfer this case to the Northern District of Illinois. In its response, and as an alternative to denying the Motion, MSC asks that the Court transfer this case to Northern District of California.

In this case, venue is only disputed as improper based on the forum selection clause—BNSF does not argue the venue is improper based on a lack of personal jurisdiction. Thus, because venue is not "wrong" or "improper" here as defined by Rule 12(b)(3), *Atlantic Marine* dictates that § 1404(a) may be used to enforce the forum selection clause. *See Cline*, 2014 WL 550738, at *5. Section 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other [venue] where it might have been brought or to any [venue] to which all parties have consented." 28 U.S.C. § 1404(a).

In *Atlantic Marine*, the Supreme Court clarified that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" 571 U.S. at 60 (citations omitted). This necessitates looking solely at the public interest factors, which include the following: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law

that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 830-31 (N.D. Tex. 2013) (citation omitted).

Applying the standard that the Supreme Court established in *Atlantic Marine* and weighing only the public interest factors, the Court finds that MSC failed to show that the public-interest factors overwhelmingly disfavor transfer. MSC does not argue factors three and four. As for factor one, MSC argues that, because a consolidation and scheduling order have already been issued here, "the Northern District of Illinois will have to duplicate work already done by this Court."[6] But this case is still in its early stages—the deadline to amend pleadings is still a month away, and discovery has not begun. Therefore, there is little concern over administrative difficulties flowing from court congestion.

As for factor two, MSC concedes that "it is unknown precisely where or when the pilferage of the Cargo took place during the rail leg of the shipment . . . ."[7] However, MSC alleges that, because the pilferage occurred from "BNSF's failure to implement policies," such failure "likely occurred in Texas."[8] Nonetheless, the local interest-inquiry is "concerned with the interest of *non-party citizens* in adjudicating the case." *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 308 (5th Cir. 2024). Thus, MSC's contention regarding BNSF's decision-makers failing to make a policy in Texas is irrelevant for this inquiry.

For these reasons, transfer is appropriate. And as BNSF's Motion is the only motion before the Court right now,[9] the Court chooses to grant

---

[6]ECF No. 21, at 9.

[7]ECF No. 21, at 10.

[8]*Id.*

[9]Even if MSC had filed a cross-motion to send this case to a California court, the Northern District of Illinois is the logical destination because, while the First Cargo and Second Cargo had different originations, their destination was the same—Chicago, Illinois.

the requested relief and sends this case to the Northern District of Illinois.

### D. Local Rule 62.2

Lastly, the Court determines that a stay would disrupt a just and expeditious resolution of this case. In September 2024, the Northern District of Texas updated its Local Rules to require a 21-day stay following any contested transfer order outside of the Fifth Circuit. N.D. TEX. L.R. 62.2. But under Local Rule 83.1, and "[n]otwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." N.D. TEX. L.R. 83.1. Prior to consolidation, MSC filed its first case on September 23, 2024, and its second case on November 18, 2024. Thus, the Parties have now been waiting nearly five months for meaningful progress in this case. An additional 21 days—for a transfer order that does nothing more than enforce a straightforward forum selection clause—is not necessary or just.

The Court also questions the legitimacy and practicality of Local Rule 62.2 (the "Rule"). In terms of legitimacy, the ostensible reason behind the Rule is to allow the de facto appellate review of a district court's decision to transfer a case to another circuit. But jurisdiction of federal courts to exercise appellate review is established by Congress and the United States Supreme Court—not the district courts through local rules. The current venue statutes, 28 U.S.C. §§ 1391, 1404(a), 1406, and 1631 say nothing related to a district court needing to stay a case following a transfer order to another district, for any amount of time. In fact, 1404(a) is so broad that it allows transfer to "*any other district or division* where it might have been brought." 28 U.S.C. 1404(a) (emphasis added). And courts have long enjoyed "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). While the venue statutes have been enacted for decades, and Congress has had ample opportunity to

amend them, the Rule seemingly circumvents that process with a substantive rather than procedural revision.[10]

As for practicality, the Rule forces district court judges to prioritize certain filings over others. For example, if a motion for preliminary injunction and motion to transfer are filed at the same time, a judge may be forced to rule on the preliminary injunction given the 21-day waiting period the parties must endure—notwithstanding a clearly improper venue. And although the Court resorts to Local Rule 83.1 in this Order to avert the 21-day stay for the Parties' interests, it is clear that Local Rule 83.1 and the Rule are inconsistent. Moreover, the Rule necessarily infringes on a district court's charge to manage its own docket. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

---

[10]The judicial branch must tread carefully when it exercises authority in areas best left to the legislative branch. *See* Letter from Thomas Jefferson to Charles Hammond (Aug. 18, 1821), in 15 THE WRITINGS OF THOMAS JEFFERSON 330–33 (Albert Ellery Bergh Ed.) (1905) ("It has long however been my opinion, and I have never shrunk from its expression . . . that the germ of dissolution of our federal government is the constitution of the federal judiciary . . . working like gravity by night and by day, gaining a little-to-day and a little tomorrow, and advancing its noiseless step like a thief, over the field of jurisdiction . . . [t]o this I am opposed because . . . it will render powerless the checks provided of one government on another . . . ."). Rather, this Court agrees with the late Senator Orrin Hatch, who said, "[i]f a judge crosses the line between interpreting and making the law, he has crossed the line supporting his legitimate authority from the legislative branch's authority. Now, to me that's a very serious matter if we believe, as America's founders did, that the separation of powers—not just a in theory or in textbook but in practice in the actual functioning of the government—is the linchpin of limited government and liberty." *Hearing on the Nomination of John Roberts to be Chief Justice of the Supreme Court Before the Senate Judiciary Committee*, 109th Cong. (2005) (statement of Sen. Orrin Hatch, member, S. Jud. Comm.).

## CONCLUSION

Based on the foregoing, BNSF's Motion to Transfer is **GRANTED** and it is **ORDERED** that this case be **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

**SO ORDERED** on this **19th day of February 2025.**


**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

10